UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE CAMPBELL,

          Plaintiff,

vs.                                      Case No. 10-cv-12775
                                      HON. GEORGE CARAM STEEH

DTG OPERATIONS, INC.,

          Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.     Introduction

Plaintiff, Ronnie Campbell, filed the present action alleging that he was terminated in retaliation for filing a worker's compensation claim in violation of the Michigan Worker's Disability Compensation Act, MICH. COMP. LAWS § 418.301(11) ("WDCA"). Defendant, DTG Operations, Inc., a rental car company that operates rental car facilities under the Dollar Rent A Car and Thrifty Rent A Car brands, removed the instant action from the Wayne County Circuit Court on July 14, 2010 and now moves for summary judgment. The court heard oral argument on December 6, 2011. For the reasons that follow, the court denies defendant's motion for summary judgment.

II.    Factual Background

On November 11, 2004, plaintiff became employed by DTG as a Check Point Representative at defendant's Detroit Metropolitan Airport location. On November 16, 2004, plaintiff was given a Courtesy Bus Driver position and remained in this position until

his termination on February 18, 2010.[1]  As a Courtesy Bus Driver, plaintiff was responsible for transporting customers to and from the rental center and the airport, assisting customers with loading and offloading luggage, performing general maintenance on the shuttle and performing other tasks as required by his supervisors.  Plaintiff was supervised by Sheila Damron, Senior Operations Manager and Peter Greenwood, the General Manager of the Detroit rental center.

On February 3, 2009, plaintiff was injured when he attempted to free a rental car that had become stuck in DTG's carwash.  Plaintiff fell into an open drain in the floor of the carwash that was missing a safety gate.  Plaintiff immediately reported the circumstances of the accident to DTG.  He complained of left knee pain and right shoulder pain as a result of his fall.  He was directed to DTG's workers' compensation medical provider, Concentra, where he was prescribed a course of physical therapy.  Plaintiff received physical therapy from February of 2009 through April of 2009.

He was off from work for approximately two weeks and was released to return to work with lifting restrictions on February 19, 2009.  Plaintiff could not assist customers with their luggage due to the lifting instructions, so management placed him on light duty work.  On February 27, 2009, plaintiff was returned to full time duty status.

On February 12, 2009, Lisa Noles, a Section Manager of DTG's Human Resources Department overseeing DTG's Worker's Compensation claims, emailed Damron informing her that this was an 'open' comp claim.  Specifically,

He should use his PTO for the waiting period; however, if he is out past 2/17, he will also get WC benefits for the first 7 days (so essentially he'd be double

_____

[1]  Plaintiff also had a part-time job at a car wash.

paid for that timeframe).  If he returns to work on the 17th he will not get WC
benefits for the first 7 days.  This is another reason why I am encouraging
you to bring him back in any capacity on or before the 17th.  Secondly, FYI-he
is in arrears with his child support and the lien has already been placed on
his WC benefits to collect the child support.  That means he might not get
WC benefits as the lien will be paid first (see info below–this was the reply
from our WC adjuster to the Child Support services lien request.
This is an open and active claim.  Mr. Campbell has been off work since
2/3/09, Once I receive his wages I will let you know what his comp rate will
be, If he returns to work prior to 2/17 he will not be owed the 1st seven days.
He has an appointment on 2/16 I should have more information for you after
that appointment.

Also on February 12, 2009, Nancy Bale, a DTG claims adjuster responsible for plaintiff's

claim, emailed Noles stating:

He called me today questioning when he will be paid, I did advise him his 14
days are up 2/17 I expect he will try to stay off past the waiting period so he
will get the 1st 14 days I also told him FOC will be taking a portion of his pay
maybe that will help get him back sooner.

On February 27, 2009, after a DTG workers' compensation doctor recommended plaintiff

get an MRI, Noles emailed Bale, "[c]ould we potentially be liable if they find something on

the MRI that we cannot prove is not work related?  That would be my only fear."

On April 16, 2009, after completing physical therapy, plaintiff was released to return

to work without restriction and he was reinstated to his Courtesy Bus Driver position.  In

August of 2009, plaintiff went to his personal physician, Dr. Feldman, because he was still

experiencing pain and discomfort in his shoulder.  Dr. Feldman referred him to Dr.

Mendelson, who recommended surgery.  On October 8, 2009, after plaintiff had been

scheduled for surgery, Noles sent Greenwood an email stating:

We have a large problem.  Ron has not been approved for any type of
surgery due to his WC claim, and further, his WC claim is currently closed.
He must immediately get in touch with Nancy Bale if he needs to reopen his
WC claim.  This surgery has not been properly authorized, and it will not be
covered under WC if he does not follow the proper channels.

-3-

Please direct him to contact Nancy immediately at 248-732-0300 x20230 to sort this out.

Thereafter, Noles contacted DTG's workers' compensation carrier to request that the file be reopened. Campbell's surgery was paid through the worker's compensation system and his wage loss benefits were reinstated.

Plaintiff claims that Peter Greenwood expressed resentment because plaintiff needed to take a half day off from work to attend his preoperative appointment. Plaintiff testified at his deposition that:

> Actually, I came in and worked four hours and I told Peter Greenwood that I had to go for this post-op. He told me, well, we need you here. I said, well, I came in to work. I said I came in to help out, but I should've been off because I had a 3:00 appointment. He said, well, you know, he don't know what will happen to me if I left. So I told him I have to go because this is something important I had to go do.

Plaintiff was able to attend his appointment, but he arrived an hour late. He was not reprimanded or otherwise spoken to for leaving his shift early to attend his doctor's appointment.

On October 29, 2009, plaintiff had his shoulder surgery. He was off from work until February 2, 2010. On December 30, 2009, he filed a workers' compensation petition seeking additional wage loss and medical coverage associated with his part-time job at the car wash, which he lost as a result of his injury at DTG. DTG disputed his petition for dual employment benefits.

On February 18, 2010, while his worker's compensation claim was still pending, DTG discharged plaintiff. Plaintiff was discharged for an incident occurring on February 16, 2010. Damron was notified by Carla Lockwood, a Rental Sales Agent, that plaintiff had offered to provide a customer a ride in his personal vehicle to another rental car company

when the customer's credit was declined by defendant. Lockwood told Damron that while

Rental Sales Agent Danielle Hunter was in the process of arranging to have a cab take the

customer to another car rental company, plaintiff approached the customer and told the

customer that he would punch out for his lunch hour and give her a ride for less than what

the cab would charge. Damron reviewed security camera footage showing plaintiff

speaking with the customer in the lobby and picking the customer up in his vehicle.

Damron was concerned about the safety and potential liability implications of

plaintiff's conduct, including the solicitation of money from a customer. Thus, the following

morning Damron sent an email to Jordan Cox, Staff Field Manager in the Human

Resources Department, requesting authorization to terminate plaintiff.

> I have attached the CAN and statement from Carla Lockwood for the request
> for termination for Ron Campbell. He offered to charge a customer less than
> a cab driver to take her to a Local Market Enterprise store because she did
> not meet the requirements for our location. I will send the pictures from the
> camera in a separate email so you can see them in color. I have him talking
> to the customer, the customer getting into his truck, and them leaving.
>
> Thanks
>
> Sheila
>
> Scott and I will be having a conversation with him shortly and I will let you know what
> he says.

When Damron questioned plaintiff about the incident, he admitted giving the customer a

ride, but denied accepting any money from her. Damron suspended plaintiff pending

further investigation. Later that day, Damron sent another email to Cox indicating that she

had just been contacted by Hunter, who was upset because plaintiff had accused her of

reporting him to Damron. Hunter explained that she was the agent who was helping the

customer to whom plaintiff offered a ride. Damron asked Hunter to recount what she

remembered of the previous day's events, and Hunter confirmed Lockwood's story.

After reviewing the documents provided by Damron, Cox agreed that termination was appropriate.  Cox prepared a report citing two policy violations that plaintiff had committed: (1) violation of the Code of Business Conduct for receiving personal financial assistance from a customer and (2) violation of the rules of Employee Conduct by engaging in actions that endanger customers or disrupt the flow of work.  Cox submitted her report to Harriet Berroteran, Director of Human Resources, and Berroteran concluded that plaintiff's conduct also violated DTG's safety rules and told Cox to include this reason in plaintiff's official termination documents.

On February 22, 2010, Laurie Griffin, the customer plaintiff gave a ride to, contacted Cox and told her that plaintiff never accepted money as payment for the ride to the other rental car company.  Cox wrote to Berroteran indicating that "the termination still stands because of safety issues and liability to the Company."  Plaintiff contends that there is no written rule prohibiting an employee from providing a ride to a customer, and defendant does not dispute this fact.  Another employee, Robert Slater, who never filed a worker's compensation claim, was only written up for the same conduct that led to plaintiff's termination.  Specifically, Damron testified:

> Q.    Well, has anyone ever been disciplined for taking a person off-site in a company vehicle?
> A.    Yes.
> Q.    Who was that?
> A.    I'm pretty sure it was Robert Slater who took a customer to a hotel on his shuttle bus.
> Q.    And when was that?
> A.    I'm not sure of the date.
> Q.    Was Mr. Slater employed in 2009?
> A.    He's still employed.
> Q.    Oh, so he wasn't fired?

A.      No.

Q.      I misunderstood you.

A.      No, he was not fired.  He was disciplined but he was not terminated.

Q.      What was the discipline that he received?

A.      Would have been a corrective action.

Q.      So, he wasn't suspended without pay or anything like that or with pay?

A.      No.

Q.      Has Mr. Slater been injured on workers' comp at any point in time to your knowledge?

A.      To my knowledge, no.

Further, Damron has never terminated an employee for soliciting tips.  She testified that "I have disciplined employees who were driving the shuttle and had a cup on their shuttle that says tips."  She did not write them up nor terminate their employment.  In addition to the lack of a written policy forbidding employees from providing rides to customers, plaintiff includes the declarations of Mary Ann Hammons, former Senior Station Manager at DTG's Detroit facility, and Chad Clayton, former Supervisor of Courtesy Bus Drivers at the same facility.  Both Hammons and Clayton assert that it was common practice for DTG's Detroit employees to transport, either in a company vehicle or personal vehicle, customers to another car rental facility if the customer was unable to rent from DTG.  Further, both Hammons and Clayton aver that they have no knowledge of any DTG policy that forbids an employee from driving customers to another rental car company on his own time and in his own vehicle, and both deny knowledge of any employees who were disciplined for such conduct.

Four days after plaintiff's termination, defendant filed a Notice of Dispute with the Worker's Compensation Agency claiming that plaintiff "voluntarily removed himself from employment by violating company policy."

-7-

III.    Law & Analysis

A.    Standard of Review

Federal Rule of Civil Procedure 56© empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

-8-

If the movant establishes by use of the material specified in Rule 56© that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

B.    Defendant's Motion for Summary Judgment

The Michigan Worker's Disability Compensation Act, MICH. COMP. LAWS § 418.301(11), prohibits an employer from retaliating against an employee for filing a workers' compensation claim. See MICH. COMP. LAWS § 418.301(11) (providing that "[a] person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.").

In order to establish a prima facie case of retaliatory discharge, a plaintiff must establish that: (1) he asserted his right to workers' compensation benefits; (2)  the defendant knew that plaintiff asserted his right to workers' compensation benefits; (3)  the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the plaintiff's assertion of his right to workers' compensation benefits and the adverse employment action. Dortman v. ACO Hardware, Inc., 405 F. Supp. 2d 812, 822

(E.D. Mich. 2005).  Michigan courts apply the McDonnell Douglas/Burdine burden shifting approach to workers' compensation retaliation claims.  Id. (citing Chiles v. Machine Shop, Inc., 238 Mich. App. 462, 470, 606 N.W. 2d 398 (1999)).  Therefore, once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment decision.  Id.

Once the defendant proffers a legitimate, non-retaliatory reason for the adverse employment decision, the plaintiff may show by a preponderance of the evidence that the stated reasons were pretext for unlawful retaliation.  Id. (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).  The plaintiff may meet this burden by showing: 1) The stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3)  the stated reasons were insufficient to explain the employer's action. Wheeler v. McKinley Enters., 937 F. 2d 1158, 1162 (6th Cir. 1991).  A plaintiff must show that the filing of a workers' compensation claim was a "significant factor" in the adverse employment action.  Dortman, 405 F. Supp. 2d at 824.  "The plaintiff cannot make such a showing through offers of speculation and conjecture."  Id.

Defendant concedes that plaintiff can establish that he asserted his right to benefits and suffered an adverse employment action, but argues that plaintiff cannot establish a prima facie case because he cannot show that any of the decision makers with regard to his termination were aware of his December 2009 workers' compensation petition and he cannot establish a causal connection between his protected activity and subsequent termination.  Because the court cannot conclude that there is no genuine issue of material fact as to plaintiff's WDCA claim, defendant is not entitled to summary judgment.

Defendant is correct that plaintiff cannot rely on his February 2009 work-related

injury and subsequent workers' compensation claim to establish the requisite causation because a one year lapse in time between the protected activity and adverse employment action is too attenuated to establish causation.  See Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008).  However, plaintiff can rely on his December 2009 workers' compensation petition to establish causation as his termination occurred less than two months after he filed his claim.  While "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence[,]" here there is more than mere temporal proximity, there is also evidence that other employees who had not filed workers' compensation claims, were not terminated for soliciting tips from customers or for providing rides to customers.  See Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir. 2000) ("[T]emporal proximity in the absence of other evidence of causation is not sufficient to raise an inference of a causal link . . . .").  Thus, the short time frame between the protected activity and the adverse employment action coupled with the other evidence of disparate treatment is sufficient to establish the causation element of plaintiff's prima facie case.

Further, defendant is incorrect in maintaining that there is no record evidence that any of the decision makers had knowledge of plaintiff's December 2009 petition at the time of his termination.  Damron testified that she had no knowledge of the December 2009 petition, but Cox, who recommended plaintiff be terminated, was aware of his December 2009 petition.  On February 17, 2010, Cox sent the report of her findings and recommendation to her manager, Berroteran.  See Plf.'s Resp., Ex. 14.  In her report, Cox indicated that plaintiff "currently has an open workers comp claim.  He was allowed to return to the location 2/07 with light duty restrictions of not lifting over 20 lbs for 6 weeks."

-11-

Id.   Further, it appears that Damron is mistaken about her knowledge of plaintiff's December 2009 petition based on her email dated February 17, 2010 in which she informed Cox that plaintiff had an open workers' compensation claim.  Id., Ex. 13 at 2. Thus, plaintiff has established a prima facie case of retaliatory discharge.

Defendant further argues that even if plaintiff has met his prima facie burden, defendant had a legitimate and non-retaliatory reason for terminating plaintiff, specifically plaintiff's violation of company policy.  Defendant also asserts that plaintiff cannot establish that defendant's stated reason was pretext for retaliation.   However, because the court cannot determine as a matter of law that defendant's proffered reason was legitimate rather than pretextual, plaintiff's claim must be submitted to the jury.  See Haughton v. Orchid Automation, 206 F. A'ppx 524, 533 (6th Cir. Nov. 20, 2006).

Defendant attempts to assert the "honest belief" defense for its conduct surrounding plaintiff's termination.   Even if plaintiff can establish that defendant's "actions were premised on a false or incomplete set of facts," this does not necessarily establish pretext. Haughton, 206 F. A'ppx at 532.   If defendant "honestly believes in the reason given for its employment action, a plaintiff cannot demonstrate pretext simply because the reason is ultimately shown to be incorrect."  Id. (internal quotations omitted) (citing Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998)).   Defendant can establish "honest belief by showing its reasonable reliance on the particularized facts that were before it at the time of the decision."  Id.  Defendant's decisional process "need not be optimal nor must it leave no stone unturned."  Id.  "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  Id.

Here, it cannot be concluded as a matter of law that defendant made a reasonably

-12-

informed and considered decision before taking the adverse employment action. Damron sent an email to Cox requesting permission to terminate plaintiff based on Lockwood's statement and her review of the security camera tape. She did not interview plaintiff or Hunter, the agent who was assisting Griffin, prior to requesting permission to terminate plaintiff. Thus, Haughton, is distinguishable because the defendant-employer in Haughton made a "considered decision" to terminate the plaintiff, conducting a two day investigation that included interviews of all witnesses that were present during the incident, as well as two interviews of the plaintiff prior to his termination. Haughton, 206 F. A'ppx at 526-28.

  Thus, the Haughton court concluded that the defendant-employer held an honest belief that termination was warranted based on the plaintiff's violation of company policy. Id. Therefore, defendant cannot rely on the "honest belief" defense because it did not make a "reasonably informed and considered decision" to terminate plaintiff's employment.

    Additionally, the fact that another DTG employee, who committed the same violation of DTG policy, was not terminated also supports plaintiff's contention that defendant's stated reason was pretextual. For instance, Robert Slater was disciplined for providing a ride to a customer, but he was not terminated. Further, the lack of a written policy prohibiting plaintiff's conduct, as well as evidence that it was common practice for employees to transport customers to other rental car facilities undermines defendant's reason for its decision to terminate plaintiff. Therefore, it remains a question for the jury to determine whether defendant's stated reason was sufficient to explain its decision to terminate plaintiff. Wheeler, 937 F.2d at 1162.

-13-

IV.     Conclusion

Accordingly,

Defendant's motion for summary judgment [#13] is DENIED.

SO ORDERED.

Dated:  July 30, 2012

                                    s/George Caram Steeh
                                    GEORGE CARAM STEEH
                                    UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 30, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---